**UNITED STATES**

v.

**Staff Sergeant Kevin M. MOELLER, FR 562–43–7296, United States Air Force.**

**ACM 27882.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 8 March 1989.

Decided 29 March 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Terry M. Petrie; Captain Leonard R. Rippey; Captain Morris D. Davis and Major Kingston E. Smith, USAFR.

Before FORAY, LEONARD and MURDOCK, Appellate Military Judges.

**DECISION**

MURDOCK, Judge:

There are at least three non-medical bases for directing urinalysis of a servicemember: command-directed (where probable cause does not exist or is not relied on as a basis) as authorized by Air Force Regulation 30–2, *Social Actions Program*, para. 5–8 (18 April 1986); random unit testing under Mil.R.Evid. 313(b); and those directed pursuant to a search authorization based on probable cause under Mil.R.Evid. 312 or 314–316. Only certain categories of urinalysis authorize punishment by court-martial. This case presents the question of whether the classification of a urinalysis

can change once the test has been conducted or authorized. At least under the facts of this case, we hold that the answer is no.

The appellant was one of about 50 squadron members chosen to participate in a random urinalysis. Apparently everything went well and the urine samples were collected and sent to the laboratory at Brooks Air Force Base, Texas. Then, two weeks later, the postal service notified the base urine test monitor that the registered parcel containing the urine samples had been lost in the mails. The squadron section commander was notified, and he decided to "reconduct" the urine collection using the same list of people. The sample provided by the appellant during this second test session was identified as positive for cocaine.

Now the appellant asserts, as he did at trial, that the second urinalysis was command-directed, and not random, and therefore cannot serve as the basis for a court-martial. *See* AFR 30–2, paragraph 5–8b. We disagree, as did the trial judge. In denying the defense motion to suppress the urinalysis results, the trial judge announced findings of fact and conclusions of law which we will paraphrase:

> When the commander authorized the first urinalysis he had no suspicions of drug use within his organization, nor did he suspect the accused, or know his social security number, or even know who the accused was.
>
> When the commander was notified of the loss of the samples, he "determined that he would reconduct the inspection using the quotas and that he would use the list of those who had been previously tested."

Finally, he found:

> [T]hat the inspection conducted on the 30th of August 1988 was not designed to identify and single out a particular individual; that the accused was not suspected of drug abuse nor was any information about him that would lead one to believe that he abused drugs available to the commander at the time; and that he was not a suspect and he was not more closely supervised than anyone else. I

specifically find that the inspection conducted on the 30th of August 1988 was not a subterfuge, but it was a legitimate inspection conducted in accordance with Military Rules of Evidence 313(b)....

We agree. The randomness required for proper random testing occurs at the time of the selection of the subjects. Once the selection is made, certain individualized directions are inevitable. For example, the selected individuals must be notified of their selection and directed to provide the required sample. This does not remove the element of randomness from a properly conducted random test. Nor is randomness lost by running a group of properly selected people through the test again for reasons similar to those which occurred in this case. The sampling had occurred, but the urine had never been tested. Thus, none of the subjects had moved any closer to being a suspect than they were when the random selection was made.

There was no error, and no prejudice to the appellant, when the commander decided to solicit new samples from the same group of randomly selected squadron members. *Cf. United States v. Bickel*, 27 M.J. 638 (A.C.M.R.1988), *pet. granted* 28 M.J. 266 (C.M.A.1989) (Army court approved a "retest" procedure of members whose urine had tested positive during the prior month).

We have examined the entire record of trial and have concluded that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.