[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 1, 2009
THOMAS K. KAHN
CLERK

No. 08-17190
Non-Argument Calendar

_____

D. C. Docket No. 03-00665-CR-CC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARC EUGENE NOBLITT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 1, 2009)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Marc Eugene Noblitt appeals from his 262-month sentence for possession of and conspiracy to possess with intent to distribute 3,4 methylenedioxy-methamphetamine (MDMA), following a resentencing hearing held on remand

from his previous appeal in United States v. Noblitt, No. 07-12683 (11th Cir. June 3, 2008). In this appeal, he argues that: (1) the timely filing of his notice of appeal divested the district court of jurisdiction to enter detailed findings of fact into the record; (2) the district court improperly adopted a "teacher-student" theory of relevant conduct to hold him accountable for the 6.5 kilograms of MDMA produced at labs with which he was otherwise unaffiliated;[1] (3) the district court erred in its calculation that he was accountable for 18 kilograms of MDMA; and (4) because part of his total attributable quantity of MDMA was produced prior to the 2001 amendment to the drug equivalency table in Sentencing Guidelines § 2D1.1, the use of the post-2001 manual to calculate his offense level gives rise to ex post facto concerns. After thorough review, we affirm.

Whether the district court has jurisdiction over a matter is a question of law subject to plenary review. See United States v. Tovar-Rico, 61 F.3d 1529, 1532 (11th Cir. 1995). We review de novo the interpretation and application of, as well as questions of law arising from, the Guidelines, and review the underlying factual findings for clear error. United States v. Kapordelis, 569 F.3d 1291, 1314 (11th Cir. 2009); United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007).

---

[1] Under the "teacher-student theory," one person aids another in carrying out a criminal activity, the other person uses and builds upon knowledge gained from that interaction to carry out similar activities on his own, and the first person is held accountable for all of the later activities.

First, we do not agree with Noblitt's claim that the district court lacked jurisdiction to make supplemental factual findings in its written order of March 18, 2009. We have held that

> [i]n the usual case, with limited exceptions . . . , the filing of a notice of appeal divests the district court of jurisdiction over the aspects of the case involved in the appeal. "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over the aspects of the case involved in the appeal." . . . This serves to avoid the confusion and waste of time that would result from dual jurisdiction.

Tovar-Rico, 61 F.3d at 1532 (quotations and citations omitted). Yet, as Tovar-Rico suggests, certain exceptions to this rule exist. For example, the former Fifth Circuit held that the filing of a notice of appeal divests the district court "of jurisdiction to take any action with regard to the matter except in aid of the appeal." United States v. Hitchmon, 602 F.2d 689, 692 (5th Cir. 1979) (en banc) (emphasis added), superseded by statute on other grounds, Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, as recognized in United States v. Martinez, 763 F.2d 1297, 1308 & n.11 (11th Cir. 1985).

Here, the district court made an oral finding at the sentencing hearing, held on December 16, 2008, that Noblitt was accountable for more than 20 kilograms of MDMA, and stated its intent to enter written findings of fact later. It requested that

3

the government prepare a draft order and that Noblitt review the accuracy of the order. Noblitt filed his notice of appeal on December 23, 2008. The written order, entered on March 18, 2009, only detailed the particularized findings that had contributed to the district court's calculations, without modifying the sentence or its foundation. Thus, the order falls into the narrow exception noted in Hitchmon for actions taken in aid of appellate review. Furthermore, as Noblitt acknowledges, the order was entered several weeks before Noblitt's initial brief was due to this Court, so he was not prejudiced in his ability to address those findings on appeal. As a result, the district court did not act outside its jurisdiction when it entered written findings of fact into the record.

We also reject Noblitt's claim that the district court improperly adopted a "teacher-student" theory of relevant conduct to hold him accountable for MDMA produced at labs with which Noblitt was otherwise unaffiliated. We recognize that a district court must begin the sentencing process by correctly calculating the applicable guideline range. Gall v. United States, 128 S. Ct. 586, 596 (2007). However, if the district court errs in applying the guidelines, we must nevertheless ignore the errors if they were harmless. Foley, 508 F.3d at 634. "[R]emand is required only if the sentence was imposed as a result of an incorrect application of the Guidelines." Williams v. United States, 503 U.S. 193, 202-03 (1992); see also

United States v. Booker, 543 U.S. 220, 268 (2005) (confirming that harmless-error review is still available under the advisory guidelines scheme when the error is non-constitutional). "[A] court of appeals must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors." Williams, 503 U.S. at 203. "If the party defending the sentence persuades the court of appeals that the district court would have imposed the same sentence absent the erroneous factor, then a remand is not required . . . and the court of appeals may affirm the sentence as long as it is also satisfied that the [sentence] is reasonable . . . ." Id.

The drug quantity table in Sentencing Guidelines § 2D1.1(c) does not specify the amounts of MDMA associated with each offense level. Rather, MDMA must be converted to an equivalent amount of marijuana for purposes of the offense level calculations. See § 2D1.1, cmt. n.10. The 2006 Guidelines apply a conversion rate of 500 grams of marijuana for each gram of MDMA. See id. Offense level 36 is associated with at least 10,000 but less than 30,000 kilograms of marijuana, or at least 20 but less than 60 kilograms of MDMA. See § 2D1.1(c); see also § 2D1.1, cmt. n.10. Offense level 34 is associated with at least 3,000 but less than 10,000 kilograms of marijuana, or at least 6 but less than 20 kilograms of MDMA. See § 2D1.1(c); see also § 2D1.1, cmt. n.10.

A defendant's base offense level is determined by his relevant conduct, including, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken . . . in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." § 1B1.3(a)(1)(B). The scope of the relevant conduct is not necessarily the same as the scope of the entire conspiracy nor the same for every participant. § 1B1.3, cmt. n.2. "To determine the quantity of drugs attributable to a defendant for sentencing purposes, the district court must first make individualized findings concerning the scope of criminal activity undertaken by the defendant." United States v. Bush, 28 F.3d 1084, 1087 (11th Cir. 1994). This requires a determination as to "the scope of the specific conduct and objectives embraced by the defendant's agreement" to participate in the scheme. § 1B1.3, cmt. n.2. "The court is then to determine the quantity of drugs reasonably foreseeable in connection with that level of participation." Bush, 28 F.3d at 1087. A defendant is

> certainly only accountable for co-conspirator conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendant[s] agreed to undertake. Consequently, although a conspirator may reasonably foresee other criminal acts, he is not accountable for those acts if they were not part of the scope of the criminal activity he agreed to undertake.

United States v. Westry, 524 F.3d 1198, 1219 (11th Cir. 2008) (per curiam) (quotations, citations, and alteration omitted), cert. denied, Carter v. United States, 129 S. Ct. 251 (2008), and cert. denied, Hinton v. United States, 129 S. Ct. 902 (2009). At the sentencing hearing, the government must prove by a preponderance of the evidence any fact to be considered by the district court. United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005).

We have not yet addressed a situation where a defendant has been held accountable for activities under § 1B1.3 on the sole basis of having taught the actor at an earlier time how to carry out such activities. Nonetheless, any error the district court may have made on this basis was harmless. As discussed below, the district court did not err in determining that Noblitt was accountable for at least 18 kilograms of MDMA produced during the 2002-03 phase of the conspiracy. Combined with the undisputed 5 kilograms produced at the Canterbury lab and during the 1998-99 phase of the conspiracy, Noblitt's attributable amount exceeds the 20 kilograms necessary for a base offense level of 36. Thus, it was unnecessary for the district court to hold Noblitt accountable under a "teacher-student" theory for the 6.5 kilograms of MDMA, and any possible error the district court may have made in so doing was harmless. See Williams, 503 U.S. at 202-03; Foley, 508 F.3d at 634.

Next, we find no merit in Noblitt's argument that the district court clearly erred in its calculation that he was accountable for 18 kilograms of MDMA produced at the Alpharetta, Stockbridge and Barnesville labs. In making this calculation, the court may consider any information, including hearsay, "provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." United States v. Baker, 432 F.3d 1189, 1253 (11th Cir. 2005).

As for the Alpharetta lab, the evidence showed that Noblitt's co-conspirator taught the lab's operators how to make MDMA and gave them some equipment that had belonged to Noblitt. Noblitt gave the men $8,000 for startup costs and supplied them with ingredients at one point during the lab's operations. Noblitt's co-conspirator told one of the lab's operators that he had sold at least 4 kilograms of the MDMA to Noblitt. Under the circumstances, the district court did not clearly err in finding that Noblitt was directly involved with at least 4 kilograms of the MDMA produced at the Alpharetta lab.

Turning to the Stockbridge lab, Noblitt's co-conspirator taught the lab's operator how to make MDMA and provided him with some equipment that had belonged to Noblitt. Both the operator and the co-conspirator told investigators that Noblitt had bought most of the 10 kilograms of MDMA produced here. On

8

this record, the district court did not clearly err in finding that Noblitt was directly involved with at least 4 of the 10 kilograms produced.

Finally, when the Stockbridge operation was relocated to the Barnesville lab, Noblitt provided its operator with some new equipment and supplies. After a time, the operator began selling directly to Noblitt rather than using the co-conspirator as an intermediary. The lab's operator told investigators that he had sold to Noblitt all of the 10-15 kilograms produced at this lab, and when the lab had to be dismantled, Noblitt paid him for the unfinished batch. Further, during the time that the Barnesville lab was in operation, Noblitt supplied the MDMA that was purchased by a government informant in a controlled buy. Thus, the district court did not clearly err in determining that at least 10 kilograms of MDMA from this lab could be attributed to Noblitt. In turn, then, the district court did not clearly err in finding that Noblitt was accountable for 18 grams of MDMA produced at the Alpharetta, Stockbridge and Barnesville labs.

Lastly, we are unpersuaded by Noblitt's claim that the use of the post-2001 Guidelines manual to calculate his offense level gives rise to ex post facto concerns. The ex post facto clause requires the district court to sentence a defendant under the Guidelines that were in effect at the time of the offense if a harsher penalty would result from using the version in effect at the time of

sentencing. Kapordelis, 569 F.3d at 1314. Yet ex post facto concerns are not implicated when conduct spans the date on which the less favorable amendment became effective, since the defendant is on notice that continuing to commit related crimes puts him at risk for sentencing under the later, amended manual. United States v. Bailey, 123 F.3d 1381, 1406-07 (11th Cir. 1997). In such situations, the district court is required to use the later manual. See id. at 1407.

The drug equivalency table in § 2D1.1 was amended as of May 1, 2001, so that one gram of MDMA, which used to be equivalent to 35 grams of marijuana, is now equivalent to 500 grams of marijuana. See U.S.S.G. App. C, Amend. 609.

Because Bailey has not been overruled by this Court sitting en banc or by a Supreme Court holding, it controls Noblitt's situation. See United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008). Therefore, the district court correctly applied the post-Amendment version of the Guidelines when it applied the 1:500 conversion ratio to all of Noblitt's attributable amount of MDMA, despite the fact that at least 2 kilograms of that amount were manufactured prior to May 2001. See Bailey, 123 F.3d at 1406-07.

Accordingly, we affirm.

**AFFIRMED.**