# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Staff Sergeant JHOAN M. CATANO
### United States Air Force

### Misc. Dkt. No. 2015-04

### ____ M.J. ____

### 14 October 2015

SPCM convened at Davis-Monthan Air Force Base, Arizona. Military Judge: Natalie D. Richardson.

Appellate Counsel for the Appellee: Captain Michael A. Schrama (argued); Lieutenant Colonel Joy L. Primoli.

Appellate Counsel for the United States: Major Meredith L. Steer (argued); Colonel Katherine E. Oler; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and TELLER
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

MITCHELL, Senior Judge, delivered the opinion of the court, in which ALLRED, Chief Judge, joined. TELLER, Senior Judge, filed a separate opinion concurring in part and dissenting in part:

The Government filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862, challenging the military judge's ruling to suppress evidence as being within the limited protections of Air Force Instruction (AFI) 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program* (8 July 2014). This evidence included statements made by Appellee to his first sergeant, statements later made at an off-base hospital which were overheard by another noncommissioned officer, and the results of a subsequent probable cause urinalysis. We conclude the military judge did not abuse her discretion and hereby deny the Government's appeal.

*Procedural Background*

Appellee is charged with three specifications alleging the wrongful use of marijuana, heroin, and lorazepam (a Schedule IV controlled substance) in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Trial defense counsel filed a pretrial motion to suppress all statements of Appellee and the results of his positive urinalysis. The special court-martial convened on 21 April 2015.

After the presentation of evidence and argument by counsel, the military judge granted the defense motion on 22 April 2015, issuing a five-page ruling. She concluded Appellee was entitled to the AFI 44-121 limited protection for certain disclosures made by Airmen who self-identify their drug abuse and the evidence derived from such disclosures. She then suppressed statements Appellee made to his first sergeant, statements he made in the emergency room within the hearing of another noncommissioned officer, and the results of a urinalysis procured through a search authorization which relied on those statements. This ruling affected all three specifications in the case.

The Government filed a timely notice of appeal on 24 April 2015. The court reporter provided a copy of the transcript of the proceedings to the military judge on 29 April 2015. On 1 May 2015, the same day she authenticated the record of proceedings, the military judge issued a 6-page supplemental ruling that incorporated the entirety of her original ruling and added several findings of fact and conclusions of law. Her ultimate conclusion was unchanged.

The authenticated record of trial (including the supplemental ruling) and notice of appeal were docketed with this court on 14 May 2015, well before the Government's appellate brief was filed on 2 June 2015.[1] We held oral argument on 28 July 2015.[2]

On 2 June 2015, the Government filed a motion to strike the military judge's supplemental ruling.[3] The Government argues that the automatic stay provision related to government appeals divested the military judge of jurisdiction over the court-martial once the notice of appeal was filed. Based on this, the Government contends the supplemental ruling is invalid and should be struck from the record. We disagreed and denied the motion to strike. At oral argument, the Government requested we reconsider

---

[1] Rule 21 of the Joint Court of Criminal Appeals Rules of Practice and Procedure requires trial counsel to forward the appeal and record of trial within 20 days. *United States v. Combs*, 38 M.J. 741, 743 (A.F.C.M.R. 1993) ("While we agree that Rule 21 does not require that the appeal be *received* by the government representative within 20 days, it does require that it be *forwarded* within that time period.")(emphasis in original). The military judge authenticated the record of proceedings seven days after the notice of appeal was filed and two days after she received the transcript. We need not address the authority of a military judge to reconsider a decision and any limitations imposed by dilatory authentication.

[2] We express thanks to our summer intern, Mr. Sean Murphy, a student at the George Mason University School of Law, for his assistance with the bench memorandum on this case.

[3] The Government filed its brief in support of its appeal and the motion to strike on the same day.

Misc. Dkt. No. 2015-04

our ruling on the motion to strike. We have reconsidered our ruling on the motion and reach the same conclusion. Our reasoning is set forth below.

*Jurisdiction and Standard of Review*

This Court has jurisdiction to hear this appeal under Article 62(a)(1)(B), UCMJ, 10 U.S.C. § 862(a)(1)(B), which authorizes the Government to appeal "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding" in a court-martial where a punitive discharge may be adjudged.

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). "'Abuse of discretion' is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *Id.* (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)). "Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)). "In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." *United States v. Cowgill*, 68 M.J. 388, 390 (C.A.A.F. 2010) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)).

Because this issue is before us pursuant to a Government appeal, we may act only with respect to matters of law. Article 62(b), UCMJ. We may not make findings of fact, as we are limited to determining whether the military judge's factual findings are clearly erroneous or unsupported by the record. *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995). "When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are 'fairly supported by the record.'" *Gore*, 60 M.J. at 185 (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985)).

*Supplemental Findings of Fact*

It is clear that, prior to authentication of a record of trial, a military judge may sua sponte reconsider any ruling, except the equivalent of a finding of not guilty. Rule for Courts-Martial (R.C.M.) 905(f). The Government contends that the military judge does not possess this reconsideration authority, as part of her authentication of a record of proceedings prepared for use in a government appeal under Article 62, UCMJ, when that authentication occurs after the Government has filed its notice of appeal.

The only authority cited by the Government for this proposition is R.C.M. 908(b)(4), which states, "Upon written notice to the military judge, . . . the ruling or order that is the subject of the appeal is automatically stayed and no session of the court-martial may proceed" on the affected charges and specifications until the appeal has been decided. We disagree with the Government's view that this language effectively freezes the content of a military judge's ruling at the moment the notice of appeal is filed.

First, we note the automatic stay provision language was added in 1991 to "state explicitly that, upon timely notice of appeal, the *legal effect* of an appealable ruling or order is stayed pending appellate resolution." *Manual for Courts-Martial, United States*, app. 21 at A21-60 (2012 ed.) (emphasis added). Here, the "legal effect" of the military judge's initial suppression ruling *has* been stayed until this court completes its review— Appellee remains subject to the charges and the military judge is precluded from requiring the Government to proceed to trial without the benefit of the evidence she suppressed. The issuance of her supplemental ruling does not change the legal effect. Also, we note that the Government's position is inconsistent with our superior court's recognition that where an appellate court finds a trial judge's "findings are incomplete or ambiguous [during review under Article 62, UCMJ], the 'appropriate remedy . . . is a remand for clarification' or additional findings." *Lincoln*, 42 M.J. at 320 (quoting *United States v. Kosek*, 4 M.J. 60, 64 (C.M.A. 1994).

Second, the rationale underlying the authority of military judges to reconsider and reverse their rulings prior to appellate review applies equally to rulings the Government elects to appeal under Article 62, UCMJ. The Supreme Court has noted the wisdom of allowing trial courts "the opportunity to promptly correct their own alleged errors," as opposed to imposing added and unnecessary burdens on appellate courts. *United States v. Dieter*, 429 U.S. 6, 8 (1976). In the military justice system, this opportunity is implemented through the military judge's ability to sua sponte change or reconsider any of her rulings, other than those amounting to a finding of not guilty, until the record of trial is authenticated and her ruling becomes final. *See United States v. Ruppel*, 49 M.J. 247, 253 (C.M.A. 1988) (permitting reconsideration of a prior ruling during a rehearing); *United States v. Griffith*, 27 M.J. 42, 48 (C.M.A. 1988) ("[E]ven after the trial had ended, [the military judge] was empowered to set aside the findings of guilty if it was apparent to him that the evidence was legally insufficient."); R.C.M. 801(e)(1)(B); R.C.M. 905(f). There is no logical reason to treat a ruling subject to an Article 62, UCMJ, appeal differently.

Third, this approach is consistent with that taken by federal appellate courts. Our superior court has looked to federal precedent for guidance regarding procedures for Article 62, UCMJ, in light of Congress' intent that such appeals be conducted under procedures similar to government appeals in federal civilian court criminal proceedings under 18 U.S.C. § 3731. *United States v. Browers*, 20 M.J. 356, 359 (C.M.A. 1985). The Government's argument that the filing of a notice of appeal automatically divests the trial

court of jurisdiction over the case has not always prevailed. *United States v. Centracchio*, 236 F.3d 812, 813 (7th Cir. 2001). A notice of appeal generally transfers jurisdiction from the trial court to the court of appeals in order to prevent the two courts from "stepping on each other's toes," which will waste time and cause confusion. *Id.*; *United States v. Tovar-Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995). In light of this, courts have found exceptions when the "danger of such a collision is remote." *Centracchio*, 236 F.3d at 813; *United States v. Reliant Energy Servs.*, 420 F. Supp. 2d 1043, 1049 (N.D. Cal. 2007). A consideration in this analysis is whether judicial efficiency is improved. *United States v. Madrid*, 633 F.3d 1222, 1226–27 (10th Cir. 2011). This includes taking action "in aid of the court of appeals' exercise of its jurisdiction," and addressing "matters that are not comprehended within the appeal." *Id.*; *see also Browers*, 20 M.J. at 359.

In evaluating whether to consider supplemental rulings issued by trial judges after the filing of the notice of appeal, appellate courts generally decline to apply a bright-line rule and instead look to the timing and nature of the supplemental ruling and whether its consideration would prejudice the appealing party. *See United States v. Bennett*, 161 F.3d 171, 186 (3d Cir. 1998) (electing to consider a supplemental memorandum where it was "a helpful amplification" of the judge's sentencing decision and its consideration would not prejudice the appellant since the judge did not alter or clarify his ruling to address the arguments raised on appeal and the parties had the opportunity to file appellate briefs in response to the supplemental ruling); *United States v. Noblitt*, 343 Fed. Appx. 544, 546 (11th Cir. 2009) (unpub. op.) (finding a lower court had jurisdiction to issue a supplemental order after the notice of appeal because it was consistent with the court's previous oral findings); *cf. United States v. Hill*, 71 M.J. 678, 681 (Army Ct. Crim. App. 2012) (finding the trial court was within its authority to reconsider its ruling dismissing charges once trial counsel withdrew the government's notice of intent to appeal prior to filing the record of proceedings with the court of criminal appeals).

In determining how to proceed here, we employ ordinary rules of statutory construction to interpret the Rules for Courts-Martial, to include reading them holistically. *Hill*, 71 M.J. at 682. Reading the relevant provisions together, in conjunction with the interpretation of similar federal civilian cases, we conclude that the military trial judge may sua sponte reconsider a ruling or order after notice of an Article 62, UCMJ, appeal and before the record of proceedings is authenticated. *See United States v. Bowser*, 73 M.J. 889, 895 n.4 (A.F. Ct. Crim. App. 2014) ("The military judge is not required to [indicate on the record an intention to follow up an oral ruling with a written ruling] and may supplement or reconsider his ruling prior to authentication, but in the case of a ruling to be appealed by the Government, it would be preferable to indicate whether the parties should expect a later written ruling.") (citation omitted).

We conclude the military judge would have been authorized to reconsider her ruling and, therefore, is permitted to issue a supplemental ruling. Thus, her supplemental

ruling is properly part of the record of proceedings. Permitting military judges to sua sponte reconsider rulings that are being appealed under Article 62, UCMJ, and to issue revised opinions prior to authentication makes practical sense. The interests of justice are best served when the trial judge makes sufficiently detailed and comprehensive findings of fact and conclusions of law. *See United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014) (holding it was necessary for a military judge to make a record that clearly signals that she applied the right law and, when factual issues are involved, to state the essential findings on the record which support her ruling). There is no prohibition for such a process; and it makes little sense to prohibit a military trial judge from issuing revised rulings and orders that may correct errors, provide more detailed findings of facts, better reasoned conclusions of law, or even incorporate new appellate decisions issued after the initial decision. *See United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) ("The authority of district courts to reconsider their own orders before they become final, absent some applicable rule or statute to the contrary, allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal.").

We also see no prejudice to the Government from these events given the timing of the supplemental filing. Both parties have been provided sufficient opportunity to respond to this supplemental ruling and the timing of the supplemental ruling was such that it would not unnecessarily delay appellate review.[4] The Government expresses concern that the military judge amended her initial ruling in an effort "to strengthen her ruling with additional facts and analysis so that she would not be overturned." Whether the changes found in the supplemental ruling favor the Government or Appellee is not the measure by which we determine the authority of the military judge to reconsider a prior ruling. We doubt the Government would object if the military judge had reconsidered her ruling and ruled in favor of the Government. *See United States v. Saunders*, Misc. Dkt. 2014-15 (A.F. Ct. Crim. App. 17 April 2015) (unpub. op.) (denying appellee's motion to dismiss a government appeal on the basis that the military judge's ruling on the motion for reconsideration was not properly included in the record of trial); *Hill*, 71 M.J. at 684 (expressly authorizing a military judge to reconsider a decision when government counsel withdraws an Article 62, UCMJ, appeal after authentication of record but before filing with service court of appeals).

We conclude the military judge is expressly authorized to sua sponte reconsider any ruling prior to her timely authentication of the record of proceedings. This includes rulings and orders subject to appeal under Article 62, UCMJ. In light of this, we will consider her supplemental ruling as setting forth the findings of fact and conclusions of law.

---

[4] We also note that this is not a situation where the timing or content of the supplemental ruling makes it "nothing more than a post hac [sic] rationalization" of her ruling. *United States v. Doucet,* 43 M.J. 656, 659 (N.M. Ct. Crim. App. 1995) (quoting *United States v. Flores-Galarza*, 40 M.J. 900, 906 n.9 (N.M.C.M.R. 1994).

*Background*[5]

Appellee was randomly selected for a urinalysis on 2 December 2014. On nine prior occasions, he had provided random urinalysis samples. On this date, Technical Sergeant (TSgt) WH, who worked in Appellee's orderly room, contacted Appellee's supervisor to confirm his availability and told the supervisor to inform Appellee that he needed to report to the orderly room. TSgt WH then noted the date and time she notified the supervisor on a pre-signed form letter. The supervisor told Appellee to report to the orderly room; however neither the supervisor nor TSgt WH were allowed to tell him exactly why he needed to report. Appellee did not report to the orderly room that day and did not receive this form. "Appellee did not receive an order from or on behalf of his squadron commander to provide a sample for a random urinalysis, nor did he receive a written order from any commander to provide a urine sample for testing in December 2014."

Later that day, Master Sergeant (MSgt) CJ, the first sergeant, noticed Appellee wanted to talk to him after he walked past his office twice. Appellee was visibly upset and said something to MSgt CJ indicating he wanted to talk about something serious. Appellee then told him, "I'm addicted to heroin." MSgt CJ called Captain (Capt) AD who served in the ADAPT program at the mental health clinic, and she agreed to see Appellee. By this time, Appellee was bawling and rocking back and forth. "[Appellee] intended to seek help for his heroin addiction from [MSgt CJ]; his intent was not to avoid punishment." Appellee told MSgt CJ that he had an appointment at the orderly room to "make a drop." MSgt CJ told him not to worry about it and not to say anything else.

After arriving at the mental health clinic, Capt AD told Appellee that he might want to obtain the services of the area defense counsel (ADC). Appellee chose this option before making any admissions to Capt AD. MSgt CJ then drove Appellee to the ADC office; however, it was closed for the day. At this point, Appellee "broke down, on his knees, bawling." MSgt CJ asked him if he was willing to get help, Appellee agreed. MSgt CJ then called Capt AD to say he was taking Appellee to a local hospital.

On his way to the hospital MSgt CJ stopped to get Appellee's supervisor. The supervisor was not available and instead directed Staff Sergeant (SSgt) JE to follow MSgt CJ and Appellee to the hospital. MSgt CJ directed SSgt JE to stay with Appellee at the hospital. Appellee was pacing and said he was mad at himself for damaging his career and that he tried to quit heroin but could not. Appellee did not make the statement directly to SSgt JE but in his presence. Appellee was later admitted to the hospital.

---

[5] The facts contained in this portion are derived from the military judge's findings of fact in the supplemental ruling. The information in quotes is verbatim from her ruling. The other information is summarized from the military judge's findings.

The next day an investigator from Security Forces obtained signed sworn statements from MSgt CJ and SSgt JE which contained most of the above information. He used this information for an affidavit to support a search authorization. The military magistrate granted the search authorization of the Appellee's blood, breath and urine for evidence of any controlled substance. On 4 December 2014, the search authorization was used to obtain a urine sample from the still hospitalized Appellee. Subsequent testing revealed the urine contained the metabolites for heroin, marijuana, and lorazepam.

*Discussion*

The appeal of the military judge's ruling suppressing the evidence is best analyzed as four related questions: (1) Are the findings of fact clearly erroneous? (2) Were Appellee's statements to his First Sergeant, MSgt CJ, within the limited protection of AFI 44-121? (3) Were Appellee's statements overheard by another noncommissioned officer, SSgt JE, within the limited protections of AFI 44-121? (4) Was the probable cause search of Appellee's urine authorized? All of these questions are answered pursuant to the standard of review in this case.

*1. Are the Findings of Fact Clearly Erroneous?*

The limited protections of AFI 44-121 apply to military members who voluntarily disclose evidence of personal drug use to their commander, first sergeant, substance abuse/misuse evaluator, or a military medical professional with the intention of entering drug treatment. ¶ 3.7.1.2.1. The instruction specifically states that a statement is not voluntary, and therefore the limited protection does not apply when the member has previously been ordered to give a urine sample as part of the drug-testing program in which the results are still pending or have been returned as positive. *Id.* at ¶ 3.7.1.2.4.3.

Two of the military judge's findings of fact are contested by the Government, as discussed below. A military judge's findings of fact are not set aside unless clearly erroneous or unsupported by the evidence. *United States v. Martin*, 56 M.J. 97, 106 (C.A.A.F. 2001). When there are two permissible views of the evidence, a military judge's decision between the two cannot be clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985).

*a. Appellee's Intent to Seek Drug Treatment*

The military judge found, "[Appellee] intended to seek help for his heroin addiction from MSgt [CJ]; his intent was not to avoid punishment."

The Government argues the evidence is more persuasive that Appellee had the intent to avoid prosecution and did not intend to seek treatment. Whether or not we agree, that is not the standard of review. Our superior court has declared, "[I]t is a

question of fact whether a servicemember intended to report himself under an Air Force self-identification drug program for purposes of securing its regulatory protections." *United States v. Waterman*, 47 M.J. 53, 54 (C.A.A.F. 1997) (citing *United States v. Avery*, 40 M.J. 325, 328 (C.M.A. 1994)). The court further indicated that "such a factual determination by the military judge or the Court of Criminal Appeals will not be disturbed on appeal unless unsupported by evidence in the record." *Id.* at 54–55. Based on the standard of review, the military judge's finding of fact about Appellee's intent is not clearly erroneous; there is evidence in the record to support the military judge's conclusion.

### b. *Ordered to Give a Urine Sample*

The military judge found:

> [Appellee] did not receive an order from or on behalf of his squadron commander to provide a sample for a random urinalysis, nor did he receive a written order from any commander to provide a urine sample for testing in December 2014. Although [TSgt WH, from Appellee's orderly room] had told the DDRP [Drug Demand Reduction Program] representative that [Appellee] was able to report on 2 December, the DDRP records show [Appellee] was on leave and the test ultimately cancelled.
>
> . . . .
>
> In this case, [Appellee] never received an order to provide [a urine sample as part of the drug-testing program].

In addition to finding that Appellee never received an order to provide a urine sample as part of the drug testing program, the military judge determined that the issue was not whether Appellee should have known that an order was forthcoming or when the commander (or his designee) signed the order, but rather whether Appellee received the order.

This is a mixed question of law and fact.

> When an appeal presents a mixed question of law and fact, as this one does, this Court will find that a military judge abused her discretion if her findings of fact are clearly erroneous or her conclusions of law are incorrect. A finding by this Court that a military judge abused her discretion requires more than a mere difference of opinion.

*United States v. Buford,* 74 M.J. 98, 100 (C.A.A.F. 2015) (citations omitted). The military judge's finding of fact that Appellee did not receive the written order is not clearly erroneous.

The question of law is: What constitutes an order to give a urine sample as part of the drug-testing program? In order to answer this question we must interpret both the AFI which creates the limited protection and the AFI which governs the random urinalysis program. We hold that such an order constitutes the entire process of notification set out in the instruction governing the urinalysis program, including presentment of the notification letter to the member.

The military judge considered AFI 90-507, *Military Drug Demand Reduction Program* (22 September 2014), in deciding this question. AFI 90-507 references the written notification which must be acknowledged by the member, must be maintained in the unit's records, and starts the two-hour reporting time period. ¶ 2.6.4.8.2. The trusted agent is prohibited from making notifications by phone and is required to have individuals "come and be presented with the letter to be notified." *Id*. at ¶ 2.6.4.8.3.6.2. We agree that the regulatory law requires written notification by the commander, prohibits telephone notification by the trusted agent, and requires the member to be presented with the written letter.

We concur with the military judge's reasoning as it is consistent with both the binding language in the urinalysis program instruction and the stated purpose of the regulatory-established limited protection afforded to those voluntary statements made to seek treatment. Distinguishing between self-identification before notification of an order and after notification of an order recognizes the value of personal acceptance of responsibility as it relates to both treatment and the appropriateness of administrative or criminal consequences. Once an Airman is notified of an order, any future disclosures are no longer protected under AFI 44-121. AFI 44-121, which sets out the Air Force drug abuse prevention and treatment program, encourages members to seek assistance themselves. ¶ 3.7.1. The primary purpose of treatment "should be restoring function, improving quality of life, and returning members to productive and unrestricted duty, or to assist them in their transition to civilian life, as appropriate." *Id*. at ¶ 3.3.1.4. Taking personal responsibility affects all those desired outcomes. Such initiative is also important in weighing the risk of future misconduct and determining an appropriate command response to drug use. Right up the point where Airmen become legally obligated to submit a sample, they retain the opportunity to self-identify and take personal responsibility for their own conduct. Once notified of the order, they no longer have a choice and must accept whatever consequences come as a result of the testing.

The Government suggests that an order to provide a sample existed much earlier in the process. At oral argument, we questioned Government appellate counsel on when

such an order becomes effective. The Government position that the computer-generated selection creates a valid military order is not persuasive. We do not believe we have reached a point in time when a computer program has the authority to issue orders without intervening action by a human member of the armed forces. We agree with the Government that Appellee received an order to report to the orderly room. We are not persuaded that Appellee's suspicion that he was ordered to report to the orderly room so that he could then receive a subsequent order to provide a urine sample legally converts the first order into the second. To follow this logic would negate the regulatory prohibition on telephone notification and obviate the regulatory requirement for written notification from the commander. The military judge's conclusion of law was correct.

2. *Did the military judge abuse her discretion when she determined the statements to the First Sergeant, MSgt CJ, were within the limited protection of AFI 44-121?*

The military judge did not abuse her discretion when she found that the statements were protected. MSgt CJ was Appellee's First Sergeant. Appellee made the statements with the intent to seek treatment. The statements by Appellee to MSgt CJ for the purpose of treatment were before the notification process set out in AFI 90-507 was complete. The military judge did not abuse her discretion when she concluded that the statements by Appellee to MSgt CJ met the requirements to be afforded the limited protection of AFI 44-121.

3. *Did the military judge abuse her discretion when she determined the statements overheard by SSgt JE at the hospital were within the limited protections of AFI 44-121?*

The military judge made the following findings of fact: MSgt CJ brought Appellee to the mental health clinic where he was to be seen by Capt AD from the ADAPT program. Capt AD advised MSgt CJ and Appellee that he might want to obtain the services of the ADC. MSgt CJ drove Appellee to the ADC office but, after they discovered the office was closed for the day, Appellee broke down and was on his knees crying. MSgt CJ then decided to take Appellee to a local hospital for treatment. While on his way there, he notified Appellee's supervisor. Due to an unrelated emergency work order, the supervisor was unable to go with the first sergeant to the hospital and instead directed SSgt JE to follow MSgt CJ and Appellee to the hospital. Once there, SSgt JE heard Appellee say he was mad at himself for damaging his career and that he was trying to quit heroin but could not. Appellee made these statements in the presence of SSgt JE but not directly to him. Appellee was later admitted to the hospital. These findings of fact by the military judge are supported by the record and are not clearly erroneous.

The military judge relied, in part, on *United States v. Alexander*, 26 M.J. 988 (A.F.C.M.R. 1988), to suppress SSgt JE's testimony. In *Alexander*, this court overturned a conviction for cocaine use based on the improper admission of statements and evidence

covered by the limited protections of an earlier version of the drug treatment instruction. Under that version of the instruction, once a member qualified for its limited protection, any disciplinary action was required to be based on independently derived evidence. In evaluating that issue, we stated:

> In this context we interpret the phrase 'independently derived evidence' as that coming from a source other than the accused. We do not consider an accused's statement admitting drug use or the results of a test of his urine to be 'independently derived evidence' within the meaning of this term and under the facts of this case.

*Id.* at 991 (citations omitted). The current version of AFI 44-121 similarly contains an exception to the limited protection for "independently derived evidence." ¶ 3.7.1.2.5.2.

We limit *Alexander* through this ruling. There is no support for the conclusion that "independently derived evidence" should be read to exclude all evidence obtained from an accused. For example the results of a probable cause search or random inspection urinalysis that was obtained independent of an accused's protected statements in seeking treatment should not be suppressed. Similarly, statements made by an accused to friends, family, or co-workers that were independent of protected statements seeking treatment should also not be suppressed.

However, in this case, Appellee was only at the hospital in a position to be overheard because his superior noncommissioned officers escorted him there in a direct and unbroken chain of events that started with a protected disclosure. The question, therefore, is whether the statements overheard by SSgt JE are "independently derived evidence" apart from Appellee's protected communications. We conclude the military judge did not abuse her discretion in determining these statements were not "independently derived evidence." The important facts here include where the statements were made (at the hospital), when they were made (while waiting at the hospital to be admitted for treatment), the person who overheard the statements (a designee of the first sergeant), and the uninterrupted unit custody of the Appellee from the time of the protected disclosure to the time at which the statements were overheard. We conclude the military judge did not abuse her discretion in suppressing these statements based on the reason that they were not independently derived.

4. *Did the military judge abuse her discretion in suppressing the results of the probable cause urinalysis for not being "independently derived" evidence?*

The military judge made the following findings of fact. The day after Appellee was admitted to the hospital, a security forces investigator obtained sworn statements from MSgt CJ and SSgt JE. The investigator used the information in the statements for

an affidavit to support a search authorization to search Appellee's blood, breath, and urine, along with his vehicle and cellphone, for the use of controlled substances. The military magistrate granted the search authorization. Pursuant to the search authorization, a urine sample was obtained by the investigator while Appellee was in the hospital. The sample was sent to the Air Force Drug Testing Laboratory which reported the results as positive for heroin, marijuana, and lorazepam. The military judge concluded the urinalysis sample "was collected based on an order from a different commander at the behest of law enforcement based solely on evidence directly flowing from a valid self-identification." The military judge's findings of fact are supported by the record and are not clearly erroneous.

The Government argues that, although the urinalysis test was called a probable cause test, it was actually an extension of the earlier authorized inspection test. For this proposition, the Government relies on *United States v. Moeller*, 30 M.J. 676 (A.F.C.M.R. 1990), where we held that a "commander directed" urinalysis was in fact an inspection test. In *Moeller*, the commander had authorized an inspection urinalysis; however, the samples were lost in the mail. *Id.* at 677. After learning this, the commander ordered the same individuals to provide a second sample but called the order a commander-directed urinalysis. *Id.* We upheld the military judge's ruling that the second order was an extension of the first inspection in part because "none of the subjects had moved any closer to being a suspect than they were when the random selection was made."[6] *Id.* We agree with the military judge that the facts in this case are distinguishable. Appellee's commander did not order him to provide a sample pursuant to his earlier selection for a random urinalysis. Here, a different commander, the military magistrate, issued the order to produce the sample based on a probable cause affidavit which in turn relied on the protected statements the Appellee made to MSgt CJ and overheard by SSgt JE. The military judge concluded the probable cause was not based on "independently derived evidence" and suppressed the evidence. We conclude that the military judge did not abuse her discretion.[7]

*Conclusion*

The appeal of the United States under Article 62, UCMJ, is hereby **DENIED**. The record is remanded for further proceedings consistent with this opinion.

ALLRED, Chief Judge, concurred.

---

[6] We note that, unlike *Moeller*, the commander in this case still had a valid inspection pending that would have allowed him to require Appellant to provide a urine sample while the unit was facilitating treatment. *Cf. United States v. Moeller*, 30 M.J. 676 (A.F.C.M.R. 1990). We narrowly construe the Government's argument that the probable cause search stood in the place of the inspection when the failure to complete the inspection was completely within the government's control.

[7] We do not address the military judge's ruling that probable cause existed only for a search for heroin and not any other controlled substances.

TELLER, Senior Judge, dissenting:

Although I join my esteemed colleagues in finding that the military judge retained the authority to sua sponte reconsider any ruling prior to her timely authentication of the record of proceedings, I respectfully dissent from the remainder of the court's opinion. In my view, both the military judge and the majority opinion depart from the plain language of AFI 44-121 in holding that the relevant inquiry is whether Appellee had received or been notified of an order to provide a urine sample rather than inquiring whether such an order had been issued.[8]

As noted by the majority, the limited protections of AFI 44-121 apply to Airmen who make voluntary disclosures to the unit commander, first sergeant, substance use/misuse evaluator, or a military medical professional with the intention of entering drug treatment. ¶ 3.7.1.2.1. By the express terms of AFI 44-121, such disclosures are not voluntary when the Airman has previously been: (1) apprehended for drug involvement, (2) placed under investigation for drug abuse, (3) ordered to give a urine sample as part of the drug-testing program in which the results are still pending or have been returned as positive, (4) advised of a recommendation for administrative separation for drug abuse, or (5) entered treatment for drug abuse. ¶¶ 3.7.1.2.4.1–3.7.1.2.4.5.

The military judge reasoned in her analysis that the key inquiry concerning voluntariness is "not whether the member should have known that he was going to receive an order, nor whether an order was signed, rather it is whether he was notified of the order." The military judge did not provide any authority for her interpretation of voluntariness in this context.

"[R]ules applicable to the construction of statutes are generally applicable to the construction of regulations." *United States v. Burton*, 42 C.M.R. 970, 972 (A.F.C.M.R. 1970); *United States v Baker*, 40 C.M.R. 216 (C.M.A. 1969).

> It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according

---

[8] Although not dispositive, I find *United States v. Alexander*, 26 M.J. 988 (A.F.C.M.R. 1988), inapplicable to the statements overheard by (SSgt) JE in the emergency room. In *Alexander*, the disclosures at issue were made to the first sergeant and drug treatment personnel, bringing the disclosures and the urinalysis results directly stemming from those disclosures under the limited protection of the regulation. *Id.* at 991. In this case, the military judge found that Appellant's statements were spontaneous emotional statements, not made to SSgt JE, but overheard by him as Appellant was pacing in the emergency room. They were not disclosures made to "the unit commander, first sergeant, substance use/misuse evaluator, or a military medical professional." Air Force Instruction (AFI) 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program*, ¶ 3.7.1.2.1 (8 July 2014). While there may be sound policy reasons to extend the limited protection afforded under AFI 44-121 to other spontaneous statements made by an Airman while under the immediate emotional effects of self-identification, such an extension would be far beyond the plain language of the AFI, and in my view, beyond this court's authority. Accordingly, I would not reach the issue of when such evidence is independently derived and I decline to join that part of the court's opinion.

> to its terms. There is no rule of statutory construction that allows for a court to append additional language as it sees fit.

*United States v. Kearns*, 73 M.J. 177, 181 (C.A.A.F. 2014) (internal quotation marks and citations omitted). The military judge, instead of applying the plain language of AFI 44-121 that a disclosure is not voluntary if the Airman "has previously been . . . ordered to give a urine sample," appended a further condition that the Airman actually received such an order.

In part, the military judge appears to have relied on the elements of the offense of failure to obey a lawful order under Article 92, UCMJ, 10 U.S.C. § 892. As she accurately summarized, that offense has four elements: (1) that a member of the armed forces issued a certain lawful order; (2) that the accused had knowledge of the order; (3) that the accused had a duty to obey the order; and (4) that the accused failed to obey the order. *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 16.b.(2) (2012 ed.). The military judge appears to have reasoned that, in order for Appellee to have been "ordered to give a urine sample," he must have been subject to sanction under Article 92, UCMJ, for any failure to do so. I disagree. The *Manual* treats the existence of an order as only one element of the offense of failure to obey a lawful order. Indeed, the existence of two independent elements, issuance of an order and knowledge of that order, necessarily implies that those inquiries are separate and distinct in establishing a violation of Article 92, UCMJ. I see no reason why they should not also be separate and distinct in interpreting AFI 44-121.

The majority opinion notes that the military judge consulted AFI 90-507 in deciding whether Appellee had been ordered to provide a sample. The record, however, indicates that the commander in this case went beyond the requirements of AFI 90-507 in at least one material sense. The sample notification letter in AFI 90-507 does not purport to order the subject to provide a sample. The record in this case indicates that, pursuant to a standard operating procedure, an agent of the commander prepared a document addressed to Appellee, bearing the commander's signature, and including the phrase "you have been selected and are hereby ordered to provide a urine specimen for drug testing purposes." While there may be a material issue as to whether the document prepared by the agent constituted an order for the purposes of AFI 44-121, the military judge failed to reach that question before ruling that Appellee's statements and urinalysis results were not admissible. Accordingly, an analysis of the requirements of AFI 90-507 alone is not sufficient to determine whether the limited protections of AFI 44-121 applied in this case.

The majority opinion also correctly discounts any assertion that the computer-generated testing roster constituted an order to provide a sample. I concur that we have not yet reached a point where a computer can, without more, generate a military obligation. Any government argument to the contrary is without merit.

The majority does not address, however, the effect of the preparation of the written order by the commander's agent. Case law suggests that a commander who retains all discretionary authority related to a certain order may lawfully delegate to subordinates the ministerial aspects of promulgating the order. *See United States v. Ayers*, 54 M.J. 85, 90 (C.A.A.F. 2000). The record in this case clearly raised the issue of the existence of an order, and the military judge had an obligation to ascertain whether that order negated the voluntariness of Appellee's disclosures, rather than applying a standard of delivery of the order not found in the plain language of AFI 44-121.

Finally, even though the verb "ordered" could reasonably be applied to both the common situation where a superior verbally conveys a mandate directly to a subordinate as well as promulgation of a written order of general or specific application, that does not render the word "ordered" ambiguous. Ambiguity does not exist simply because more than one specific example can be enumerated under a broader concept. *See Moskal v. United States*, 498 U.S. 103, 108 (1990) ("Because the meaning of language is inherently contextual, we have declined to deem a statute 'ambiguous' for purposes of lenity merely because it was possible to articulate a construction more narrow than that urged by the Government."). The plain meaning of "ordered" is not restricted to direct verbal orders, and we should not apply such a restricted notion here.

Even if I were to conclude that the meaning of the phrase "has previously been ordered" is not plain, the surrounding text of AFI 44-121 would lead me to conclude that the drafters did not intend to preclude a finding of voluntariness only when the subject had actually received an order to provide a sample.

First, the language of AFI 44-121 indicates that the drafters were aware of the distinction between an official act and knowledge of that act. In the subparagraph immediately following the provision relating to orders to provide a sample, AFI 44-121 lists another exception to voluntariness: when the Airman has previously been "advised of a recommendation for administrative separation for drug abuse." ¶ 3.7.1.2.4.4. Since the drafters were cognizant of the difference between being recommended for separation and being advised of that recommendation, it is rational to infer that they knew the difference between being ordered to provide a sample and being notified of that order. Despite this apparent awareness, they chose not to specify delivery of the order (or notification, or even knowledge) as the triggering condition for the exception to voluntariness. I recognize and appreciate the majority opinion's sound policy arguments for encouraging self-identification. The decision of how best to vindicate those policy concerns, along with all the other policy concerns relevant to drug abuse prevention and treatment, is the appropriate province of the drafters of the instruction, not this court.

Second, while I considered the argument that our interpretation of voluntariness, as a state of mind, should by its nature include only those facts of which the subject was aware, the surrounding context of AFI 44-121 shows that the drafters did not intend that

interpretation. As a general rule, inquiry into a state of mind is a subjective one. Indeed, in *Schneckloth v. Bustamonte* the Supreme Court described the "very object" of a voluntariness inquiry as "the nature of a person's subjective understanding." 412 U.S. 218, 230 (1973). Were we to apply the general rule and engage in a subjective examination, then we would indeed inquire into whether Appellee's statements that he had an appointment to "make a drop" showed his subjective awareness of the order.

However, in the context of AFI 44-121, voluntary is a defined term, so we do not apply the general rule. The exception to voluntariness immediately preceding the provision at issue here involves cases when the subject has previously been "placed under investigation for drug abuse." AFI 44-121, ¶ 3.7.1.2.4.2. In the routine course of events, the subject of a drug abuse investigation is often not aware that the investigation has begun. It would be a far stretch indeed to ignore that practical reality and interpret into the investigation exception the same notice requirement that the military judge read into the exception at issue here. Because I conclude that the drafters of this specific definition of voluntariness did not intend the investigation exception to have an implicit notice or awareness requirement, I am not persuaded by the argument that we should read one into the urinalysis exception simply because under a different rule of law such awareness might have been relevant.

Finally, in light of the practical realities of the Air Force random urinalysis program, the military judge's interpretation of the exception at issue here would undermine, not facilitate, the purpose of that section of AFI 44-121. As the Supreme Court noted in *FDA v. Brown & Williamson*,

> It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (internal quotation marks and citations omitted). The exceptions to voluntariness in AFI 44-121 indicate one clear and overriding intent: despite the compelling policy reasons to encourage self-identification, those aims should not allow an Airman to escape accountability for drug abuse by admitting illicit use only after its discovery through independent means has already become likely. That is the only interpretation that integrates all of those disparate exceptions "into an harmonious whole."

In light of that overall regulatory scheme, this court should not read into AFI 44-121 a requirement that would frustrate its purpose by allowing Airmen to evade accountability by disclosing their drug use to a covered party after they become aware of

an impending order to submit a sample, but before that order is delivered. The military judge acknowledged in her findings of fact that Appellee had been ordered to provide a urine sample nine times prior to the test at issue here, and that Appellee himself "believed he was selected for a random urinalysis that afternoon." If this court is to give meaning to the exceptions to voluntariness enumerated in AFI 44-121, then at the very least our inquiry should be whether the subject was aware of the imminent order, not the rote formality of actual delivery of the written order. *Cf. United States v. Nettles*, 74 M.J. 289, 292 (C.A.A.F. 2015) ("[C]ourts should not require 'what amounts to livery of seisin' to effectuate a discharge."). Actual delivery of a written order is not required for a prosecution under Article 92, UCMJ. *See United States v. Curtin*, 26 C.M.R. 427, 432 (C.M.A. 1958) ("Actual knowledge may, as any other matter of proof, be shown by circumstantial evidence."). We should not artificially read it into the exception here.

In my view, the military judge abused her discretion by appending an additional notice or delivery requirement to the plain language of AFI 44-121, ¶ 3.7.1.2.4.3. Accordingly, I would remand the case to the trial court for a determination whether an order for Appellee to submit a urine sample had been issued and a reconsideration of the admissibility of the disclosures and urinalysis results based on that determination.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court