*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOUTZ, DEERWESTER and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Cheyenne FLOYD**
Sonar Technician Seaman (E-3), U.S. Navy
*Appellee*

**No. 202200106**

_____

Decided: 29 September 2022

Appeal by the United States Pursuant to Article 62, UCMJ

Military Judge:
Ryan J. Stormer

Arraignment 10 January 2022 before a general court-martial convened at Naval Station San Diego, California, consisting of officer and enlisted members.

For Appellant:
*Lieutenant Ebenezer K. Gyasi, JAGC, USN*
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Lieutenant John L. Flynn, JAGC, USN*

For Appellee:
*Lieutenant Christopher B. Dempsey, JAGC, USN*

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

HOUTZ, Senior Judge:

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(A), Uniform Code of Military Justice [UCMJ]. Appellee is charged with one specification of attempted receipt of child pornography, and five specifications of sexual abuse of a child, in violation of Articles 80 and 120b, UCMJ.[1] Two of the sexual abuse of a child specifications (Specifications 2 and 4) are relevant to this appeal.

After referral of charges and shortly before trial was set to begin, the trial defense counsel for Appellee moved to dismiss two of the five specifications alleging sexual abuse of a child for defective preferral and discovery violations. Trial defense counsel argued that, at the time of preferral, Charge II, Specification 2 alleged "excessively inflammatory" language that was not supported by evidence. Trial defense counsel further argued that, at the time of preferral, Charge II, Specification 4 was not supported by the evidence reviewed by the accuser. Finally, the trial defense counsel argued that after preferral and during the months leading up to trial, the Government violated its discovery obligations.

The Motion to Dismiss was litigated at an Article 39(a) session. At the conclusion of the hearing the military judge made an oral ruling dismissing Specification 2 with prejudice and dismissing Specification 4 without prejudice. During the hearing the military judge told the parties that he intended to supplement his oral ruling with a written ruling.[2] In his oral ruling, the military judge determined that with regard to Specification 2, in addition to not being supported by the evidence, the trial counsel violated discovery obligations under Military Rule of Evidence [Mil. R. Evid.] 304(d) and Rule for Courts-Martial [R.C.M.] 701 by making late disclosures to the defense. This included the fact that the trial counsel did not interview the named victim in the specification until shortly before trial. The Government filed a timely Notice of Appeal in response to the oral ruling. Consistent with his representation to the parties,

———————————

[1] 10 U.S.C. §§ 880 and 920b.

[2] R. at 334.

four days later the military judge issued a written ruling supplementing his earlier oral ruling.

On appeal, the Government asserts one assignment of error [AOE]: the military judge abused his discretion when he dismissed Specifications 2 and 4 for improper or defective preferral. The Government further argues that this court should disregard the military judge's written ruling because it was issued in violation of R.C.M. 908(b)(4). We disagree, and take action in our decretal paragraph.

# I. BACKGROUND

The charges and specifications arise out of incidents that occurred during New Year's Eve in December 2020 and New Year's Day, January 2021. Appellee and several friends were in the barracks when they accessed a website that initiated a video chat between randomly selected users via webcam. The group ended up chatting with two girls who were minors – Ms. Grace and Ms. Madison.[3] Using the website's chat feature, Appellee allegedly asked the young women to expose themselves and perform lewd acts, and later continued the conversations using cellphones. In early March 2021, Ms. Grace and Ms. Madison were interviewed by Naval Criminal Investigative Service [NCIS] agents regarding the subject allegations against Appellee. Those interviews were recorded, transcribed, summarized in written Reports of Investigation [ROI], and provided to the trial counsel. NCIS also collected media from the young women related to the allegations and interviewed Appellee. Based on that information, the charges and specifications, to include those relevant to this appeal, were preferred on 20 October 2021.

At the time of preferral, Specification 2 alleged sexual abuse of a child involving indecent communication:

> In that [Appellee] . . . did, at or near San Diego, California, on divers occasions between on or about December 2020 and on or about January 2021, commit a lewd act upon [Ms. Grace], a child who had not attained the age of 16 years, by intentionally communicating to [Ms. Grace] indecent language, to wit: "You look fine for someone so young", "Let me see your t[***]", "Show me your a[***]", "Show me your p[***]", and "Still the best t[***] I've

---

[3] All names in this opinion, other than Appellee, counsel, and judges, are pseudonyms.

ever seen", or words to that effect, with an intent to arouse or gratify his sexual desire.[4]

At the time of preferral, Specification 4 alleged sexual abuse of a child involving indecent conduct and stated:

> In that [Appellee] . . . did, at or near San Diego, California, on or about 31 December 2020, commit a lewd act upon [Ms. Madison], a child who had not attained the age of 16 years, by engaging in indecent conduct, to wit: masturbating himself in front of [Ms. Madison] over live-stream video and directing her to expose her breasts and touch her body, intentionally done with [Ms. Madison] . . . .[5]

Operations Specialist Second Class [OS2] Romeo was the accuser in this case. She testified that when she preferred the charges, she considered the ROIs summarizing the interviews of Ms. Grace and Ms. Madison, the media which included screenshots from the young women's phones, and Appellee's statements to NCIS. OS2 Romeo did not review the transcripts of the interviews or watch the recordings of the interviews of either Ms. Madison or Ms. Grace. Nor did she review or know the elements of the offenses preferred in this case.

Appellee was arraigned on 10 January 2022, and thereafter trial defense counsel made several discovery requests to the Government. In response to trial defense counsel's initial discovery request, the Government responded that all the responsive documentation known to the Government had been provided to the Defense. A short time later, the trial defense counsel sent another discovery request to the Government and the Government responded, stating it did not "intend to provide a synopsis of expected testimony" of any of its witnesses.[6] There were several Article 39(a) sessions prior to trial and the trial defense counsel became aware that Appellee had provided another statement to NCIS that the Government had not turned over to the Defense. The trial court ordered the Government to turn over this statement and ordered the Government to comply with the remainder of its discovery obligations by 4 April 2022. On 4 April 2022, Ms. Grace's mother canceled Ms. Grace's scheduled interview with trial defense counsel. On 5 April 2022, the trial defense counsel sent a request for a bill of particulars to the Government asking by

---

[4] Charge Sheet at 2 (emphasis added).

[5] *Id.*

[6] App. Ex. XXXI.

what means  Appellee allegedly said "show me your a[***] [and] show me your p[***]." On 7 April 2022, the Government responded that,

> [T]he specification expressly alleges every element of the charged offense as is required by R.C.M. 307. The Government has provided notice of the place, time, substances of the indecent communications, and to whom the communications were made. The specification adequately informs the accused of the nature of the charge with sufficient precision to enable the accused to prepare for trial, to avoid surprise at the time of trial, and to enable him to plead the acquittal or conviction in bar of jeopardy. Additionally, the evidence provided in this case provides sufficient additional notice into the underlying evidence that supports the allegation.[7]

It is important to note that after the initial interviews with NCIS, no member of the prosecution team interviewed either Ms. Grace or Ms. Madison before 16 April 2022, approximately one business day before the trial was to begin.

Appellee moved to dismiss both specifications for improper or defective preferral. In the motion, Appellee alleged prosecutorial overreach and discovery violations. Trial defense counsel argued that Specification 2 contained language that was not supported by the evidence the Government provided and was "excessively inflammatory."[8] Trial defense counsel alleged the communications in Specification 2—"Show me your p[***]" and "Show me your a[***]"— amounted to overcharging without probable cause because the Government had no evidence to show Appellee said this exact language to Ms. Grace. Trial defense counsel argued that Specification 4 was also defective because the evidence reviewed by the accuser did not support the allegation that Appellee ask Ms. Madison to expose her breasts or touch her body.

At the motions hearing the military judge heard testimony from OS2 Romeo. She testified that she understood probable cause to mean that the charge sheet was correct based on her review of "the ROIs and evidence."[9] She testified that at the time of preferral she reviewed Appellee's  interview and spoke with

---

[7] Bill of Particulars, App. Ex. XXX.

[8] App. Ex. LXVIII.

[9] R. at 231.

trial counsel about the meaning of the phrase "words to that effect."[10] With regard to Specification 2, OS2 Romeo understood that the phrase "words to that effect" "means a different word meaning the same thing."[11] OS2 Romeo, however, believed the quoted language in Specification 2 to be direct quotes of Appellee that she saw when she reviewed ROIs, media, and Appellee's statements. However, the quoted language in Specification 2 did not appear in any evidence reviewed by OS2 Romeo and, in fact, did not appear in any evidence provided to the defense prior to 16 April 2022. The following colloquy occurred between the military judge and trial counsel:

> MJ: You believed based on an interview, but in that interview, did [Ms. Grace] ever use these quotes?
>
> ATC: She did not say the word "p[***]," Your Honor.
>
> MJ: Okay. Did she use these quotes in her interview?
>
> ATC: She used some of these quotes in the specification.
>
> MJ: The specific ones that are at issue here today, did she ever say he told her, "Show me your a[***]," "Show me your p[***]"?
>
> ATC: Not those specific quotes, Your Honor.
>
> MJ: Okay. So, you just assumed that maybe she'll [say] that, but you weren't for sure, right, because you've never talked to her?
>
> ATC: Yes, Your Honor.
>
> MJ: At that point in time, you had never talked to her.
>
> ATC: Yes, Your Honor.[12]

With regard to Specification 4, OS2 Romeo also relied on the ROIs, specifically the ROI pertaining to the interview of Ms. Madison, in making a decision to prefer. However, the ROI that captured the interview with Ms. Madison does not support the specification. Ms. Madison's ROI does not mention Appellee's masturbation, Appellee directing Ms. Madison to touch her body, or a separate FaceTime call with her.

---

[10] R. at 234.

[11] R. at 235.

[12] R. at 273.

Specific to Specification 4, the military judge asked trial counsel to articulate the evidence supporting the allegation that Appellee was masturbating during the second FaceTime call.[13] Trial counsel explained that it came from the law enforcement interview with Ms. Grace where she said, "I saw them doing it again," when she woke up from a nap, referring to what happened on the first FaceTime call. Nevertheless, the record is clear that OS2 Romeo did not review the NCIS interview of Ms. Grace.

In his oral ruling, the military judge found that OS2 Romeo was properly sworn prior to preferral and, once sworn, considered evidence she had in front of her that supported the allegations.[14] The military judge noted that despite having the evidence, OS2 Romeo did not review or watch the interviews of the two young women.[15] The military judge further found that trial counsel provided no notice to Appellee that the quoted language—"show me your a[**]" and "show me your p[***]"—appeared in discovery materials provided to the Defense, nor any evidence that these exact quotes were said to Ms. Grace. In response to Appellee's discovery motions and during an R.C.M. 802 conference, the military judge ordered trial counsel to identify where the quoted language appeared in the evidence disclosed to the Appellee.[16] After the R.C.M. 802 conference, trial counsel told trial defense counsel the charged language was chosen because the Government believed that the quoted language best reflected Appellee's words to Ms. Grace.[17]

Ultimately the military judge dismissed Specification 2 with prejudice, finding both defective preferral and a violation of the Government's discovery obligations. The military judge found OS2 Romeo's "testimony to be credible with regard to her belief that the quoted language in Specification 2 of Charge II [was] actual quotes by [Appellee]."[18] The military judge further found the accuser "to be truthful" when she testified that she reviewed evidence supporting the specification's language of "show me your p[***]" and "show me your

---

[13] R. at 323.

[14] R. at 335.

[15] R. at 336–37.

[16] R. at 341.

[17] R. at 341.

[18] R. at 346.

a[**]."[19] Nonetheless, the military judge found the preferral to be defective because the accuser's "assertion about the truthfulness of the specification [was] flawed."[20] It was "flawed" because evidence that Appellee said the quoted language did not exist at the time of preferral. The military judge found trial counsel's use of the phrase "words to that effect" did not cure the defective preferral because "the actual words matter because the indecent nature of the words are, in fact, an element of the offense."[21]  The military judge found the Government violated its Mil. R. Evid. 304(d) obligations with respect to Specification 2 because trial counsel was not "forthright with the defense on the evidence as it relates to the specification."[22] Specifically, trial counsel did not directly respond to trial defense counsel about the state of the evidence, and trial counsel's decision to wait until the eve of trial to interview Ms. Grace about "what the [Appellee] said to her, and what she did on FaceTime while [Appellee] watched" was unacceptable.[23]

The military judge also dismissed Specification 4 for defective or improper preferral but did so without prejudice. He reasoned that dismissal without prejudice was appropriate because "the defense was given evidence in this case in regard to this specification." The military judge stated his analysis regarding the defective or improper preferral would be different had the accuser reviewed the statements of Ms. Grace and Ms. Madison.[24]

At the conclusion of the hearing, and prior to ruling from the bench, the military judge stated that he would supplement his oral ruling with a written ruling. Prior to the military judge supplementing the record, the Government filed a Notice of Appeal. Shortly after the Notice of Appeal was filed, but before the record was authenticated, the military judge issued his written ruling. The Government argues on appeal that this Court should disregard the written ruling because the military judge was divested of the authority to supplement the record once the automatic stay went into place and allowing him to do so is in violation of R.C.M. 908.

---

[19] R. at 346.

[20] R. at 346.

[21] R. at 347.

[22] R. at 348.

[23] R. 347–49.

[24] R. at 345.

## II. DISCUSSION

### A. The Military Judge's Written Ruling

The Government asserts that this Court should disregard the military judge's written ruling, arguing that R.C.M. 908 divests the military judge of any jurisdiction over the case, and thus that he had no authority to issue a new ruling on the same matter after the United States filed its notice of appeal. We disagree.

We employ ordinary rules of statutory construction to interpret the Rules for Courts-Martial, to include reading them holistically.[25] We find that the military judge may reconsider a ruling or order, including supplementing an oral ruling with written findings, after notice of an appeal under Article 62, UCMJ, and prior to the authentication of the record.

In *United States v. Catano*, the Air Force Court of Criminal Appeals [AFCCA] considered much the same issue as the one before us now.[26] There, the government filed an Article 62, UCMJ, interlocutory appeal that challenged the military judge's ruling to exclude evidence.[27] Following a motions hearing, the military judge excluded the evidence offered by the Government in a written ruling on 22 April 2015.[28] Two days later the Government timely filed a notice of appeal.[29] On 1 May 2015, the military judge issued a 6-page supplemental ruling which incorporated her original ruling and added several findings of fact and conclusions of law – leaving her ultimate conclusion unchanged.[30] That same day, she then authenticated the record of proceedings.[31] The case was docketed with the AFCCA on 14 May 2015. On 2 June 2015, the Government filed a motion to strike the supplemental ruling, which the court

---

[25] *United States v. Hill*, 71 M.J. 678, 685 (Army Ct. Crim. App. 2012).

[26] *United States v. Catano*, 75 M.J. 513 (A.F. Ct. Crim. App. 2015).

[27] *Id*. at 515.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *Id*.

denied.[32] At oral argument, the Government requested reconsideration of the court's ruling, which the AFCCA addressed in its published opinion.[33]

There, as here, the Government argued that "the military judge does not possess [R.C.M. 905(f) ruling] reconsideration authority, as part of her authentication of a record of proceedings prepared for use in a [G]overnment appeal under Article 62, UCMJ, when that authentication occurs after the Government has filed its notice of appeal."[34] The AFFCA disagreed, citing three primary rationales, all of which we find persuasive.

First, consideration of a military judge's written supplementation of a record does not violate R.C.M. 908's automatic stay because the legal effect of the military judge's ruling remains intact pending final appellate resolution.[35] Second, the AFCCA found the "rationale underlying the authority of military judges to reconsider and reverse their rulings prior to appellate review applies equally to rulings the Government elects to appeal under Article 62, UCMJ."[36] As the Air Force Court explained, "[t]he Supreme Court has noted the wisdom of allowing trial courts 'the opportunity to promptly correct their own alleged errors,' as opposed to imposing added and unnecessary burdens on appellate courts."[37] In the military justice system, such an opportunity is given effect by R.C.M. 905(f), which confers to the military judge the authority to sua sponte reconsider any ruling (other than a finding of not guilty) until the record of trial is authenticated. Third, the AFCCA considered precedents from civilian federal courts "in light of Congress' intent that such appeals be conducted under the procedures similar to [G]overnment appeals in federal civilian court

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 516.

[35] *Id.* at 516 ("…the automatic stay provision language was added in 1991 to 'state explicitly that, upon timely notice of appeal, the legal effect of an appealable ruling or order is stayed pending appellate resolution.' Here, the 'legal effect' of the military judge's initial suppression ruling has been stayed until this court completes its review—Appellee remains subject to the charges and the military judge is precluded from requiring the Government to proceed to trial without the benefit of the evidence she suppressed. The issuance of her supplemental ruling does not change the legal effect.") (citation omitted).

[36] *Id.* at 516.

[37] *Id.*

criminal proceedings under 18 U.S.C. § 3731."[38] In its analysis, the AFCCA concluded that, generally, such supplementations are permissible where they reduce confusion and are in aid of the appellate court's jurisdiction.[39] Ultimately, the AFCCA concluded that "the military judge would have been authorized to reconsider her ruling and, therefore, is permitted to issue a supplemental ruling," thus, the military judge's supplemental ruling was properly part of the record before the AFCCA.[40]

Here, the military judge issued an oral ruling from the bench dismissing Specification 2 with prejudice and Specification 4 without prejudice. The military judge noted that, while he would rule from the bench, he intended to supplement his oral ruling in writing.[41] On 22 April 2022, the Government timely filed a Notice of Appeal which stayed the proceedings. Four days later, the military judge issued a written ruling which supplemented his oral ruling from the bench. Then, in accordance with R.C.M. 908(b)(5) and R.C.M. 1112(c), the court reporter certified the record of trial on 13 May 2022. We find that the military judge, having had the authority to reconsider his ruling, properly supplemented the record with his written ruling and that the entire record, including the supplement, is properly before this Court.[42]

Finally we note, as the AFCCA did, that this position lends itself to improved judicial economy. The Court of Appeals for the Armed Forces has recognized that where an appellate court finds during the course of an Article 62, UCMJ, appeal that a trial judge's findings are "incomplete or ambiguous,"[43] the "appropriate remedy is a remand for clarification or additional findings."[44] It would be nonsensical to preclude military judges from supplementing their oral rulings prior to certification of the record, only to wait and then have an

---

[38] *Id.* at 517.

[39] *Id.*

[40] *Id.* at 518.

[41] R. at 334 ("[t]he court will be supplementing this ruling with a further written ruling that will be filed and put in the record").

[42] We note that the judge's written ruling is very similar to his ruling on the record. Therefore, even if we were to disregard the written ruling we would still find that the military judge acted within his discretion, and our findings and holding, below, would remain unchanged.

[43] *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995).

[44] *Id.* at 320 (quoting *United States v. Kosek*, 41 M.J. 60, 64 (C.M.A. 1994)) (internal quotation omitted).

appellate court remand an interlocutory appeal back to the military judge for further clarifications. As such this Court will consider the military judge's written ruling.

## B. Improper Preferral and Discovery Violations

We find that the military judge did not abuse his discretion in dismissing either specification for improper or defective preferral. Further, we find that the military judge did not abuse his discretion in dismissing Specification 2 with prejudice.

### 1. Standard of Review and the Law

We review a military judge's ruling to dismiss charges and specifications for an abuse of discretion.[45] Further, military appellate courts review dismissal "with prejudice" based on discovery violations for an abuse of discretion.[46] A military judge abuses his discretion when his "findings are clearly erroneous or if his decision is influenced by an erroneous view of the law."[47] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion."[48] "The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'"[49]

Under Article 30(a), UCMJ, charges and specifications "shall be preferred by presentment in writing, signed under oath before a commissioned officer of the armed forces who is authorized to administer oaths."[50] The signer must state he or she "has personal knowledge of, or has investigated, the matters set forth in the charges and specifications; and the matters set forth in the charges and specifications are true, to the best of the knowledge and belief of the signer."[51] "[T]he traditional purpose of the military charging provisions is 'to ensure the charges were not frivolous, unfounded, or malicious, but' are

---

[45] *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

[46] *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F. 2005).

[47] *Gore*, 60 M.J. at 187.

[48] *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014) (citation omitted).

[49] *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citations omitted).

[50] Article 30(a), UCMJ.

[51] Art. 30(b), UCMJ; R.C.M. 307(b)(2); see *United States v. Miller*, 33 M.J. 235, 236–37 (C.M.A. 1991).

founded 'in good faith.'"[52] "[T]o maintain the validity of the purposes of this oath, an accuser need only generally believe that the allegations contained in the charges are true at the time they are preferred."[53]

Under Mil. R. Evid. 304(d), the Government has an affirmative duty, prior to arraignment, "to disclose to the defense the contents of all statements, oral or written, made by the accused that are relevant to the case, known to trial counsel and within the control of the Armed Forces."[54] R.C.M. 701(d) obligates all parties with a continuing duty to disclose information. Trial Counsel has no duty to disclose that which is not within the custody or control of the United States.[55]

Discovery in the military justice system is broader than in federal civilian criminal proceedings.[56] Generally, the parties to a court-martial "shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."[57] Under the discovery rules prescribed by the President, the defense must be permitted to inspect any papers or documents "within the possession, custody, or control of military authorities" that are "relevant to defense preparation."[58] In addition, the "[t]rial counsel shall, as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to . . . [a]dversely affect the credibility of any prosecution witness or evidence."[59]

When fashioning a remedy for a discovery violation, military judges consider the individual facts of the case.[60] Under R.C.M. 701(g)(3), if a party fails to comply with the discovery rules, the military judge may take one or more of

---

[52] *Miller*, 33 M.J. at 237 (quoting Winthrop, Military and Precedents 151 (2d ed. 1920 Reprint)).

[53] *United States v. Miller*, 31 M.J. 798, 802 (A.F.C.M.R. 1990), *aff'd*, 33 M.J. 235 (C.M.A. 1991).

[54] *United States v. Farley*, 60 M.J. 492, 493 n.2 (C.A.A.F. 2005).

[55] *United States v. Lofton*, 69 M.J. 386, 390 (C.A.A.F. 2011)).

[56] *United States v. Jackson*, 59 M.J. 330, 333 (C.A.A.F. 2004).

[57] Art. 46(a), UCMJ.

[58] R.C.M. 701(a)(2)(A)(i). Evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. Mil. R. Evid. 401.

[59] R.C.M. 701(a)(6)(D).

[60] *See United States v. Dancy*, 38 M.J. 1, 6 (C.M.A. 1993).

the following actions: (1) order the party to permit discovery; (2) grant a continuance; (3) prohibit the party from introducing evidence, calling a witness, or raising a defense not disclosed; and (4) enter such other order as is just under the circumstances.[61] Dismissal "is a drastic remedy" but may be appropriate when "no lesser sanction will remedy" the prejudicial effects of the discovery violation.[62]

### 2. Charge II, Specification 2

Here, we find no abuse of discretion in the military judge's determination that Specification 2 was defectively or improperly preferred. Additionally, we find that the military judge did not abuse his discretion in dismissing the specification with prejudice. His determination was predicated on findings of fact that are supported by the evidence in the record; he used correct legal principles; he applied those correct legal principles to the facts in a way that was not clearly unreasonable; and, he considered all of the important facts.

The Government concedes that, at the time of preferral, there was zero evidence before OS2 Romeo that the specifically contested language quoted in Specification 2 was stated by Appellee. The Government cites *United States v. Arma* to support the argument that the military judge erred.[63] *Arma* held that the military judge abused her discretion when she found the R.C.M. 307 preferral requirements were not met because the accuser believed he should have personally reviewed more evidence and had substantial doubts about the strength of the evidence, law enforcement methods, and the legal office's failure to provide him with some of the evidence. The *Arma* court found preferral was not defective because R.C.M. 307 "does not require a final or conclusive determination of the accused's guilt prior to court-martial," and the military judge erred by "review[ing] the weight and sufficiency of the evidence the accuser relied upon and apparently came up with her own conclusion about whether it was convincing or complete." This case is very different.

Here, the military judge did not review or question the "weight and sufficiency" of the evidence. He based his ruling on the undisputed fact that there was *no* evidence in existence at the time of preferral to support the quoted language. We see that as very different than a military judge substituting his

---

[61] R.C.M. 701(g)(3).

[62] *United States v. Stellato*, 74 M.J. 473, 488 (C.A.A.F. 2015) (internal quotation marks and citation omitted).

[63] *United States v. Arma*, No. 2014-09, 2014 CCA LEXIS 802 (A.F. Ct. Crim. App. Oct. 22, 2014).

assessment of the evidence for that of the accuser's. The military judge found that OS2 Romeo was credible, but mistaken about the quoted language existing in the media she reviewed. The bottom line is that had OS2 Romeo been mistaken about the weight and sufficiency of the evidence we would likely agree with the Government–but here, she was mistaken that there was evidence at all. The issue, as stated by the military judge, was simply that there was no evidence at the time of preferral. This is very different from the scenario where evidence exists but a military judge determines that the weight and sufficiency of that evidence does not support preferral. In *United States v. Miller*, the Court of Military Appeals articulated that the purpose of preferral is to ensure the "charges were not frivolous, *unfounded*, or malicious, but are founded in good faith."[64] The question at preferral is not whether the Government can "final[ly] or conclusive[ly]" prove "an accused's guilt prior to his court-martial," but rather whether the accusations are "founded 'in good faith.'"[65] Here, the military judge correctly found the specifications at issue were unfounded, albeit made in good faith. The Government's assertion that "good faith" alone can cure the defective specification is misplaced.[66] In this case, good faith cannot overcome the undisputed lack of evidence at the time of preferral with regard to the contested quotes charged in Specification 2.

We also agree with the military judge that that the term "words to that effect" does not save this preferral. When combined with all of the circumstances surrounding this case, it is indeed significant that the Government made a decision to use quotation marks around the language it alleged Appellee said. This was misleading and, as detailed below, ultimately exacerbated by the subsequent actions and inactions of the Government. During the many months before trial, and despite many attempts by trial defense counsel to seek clarification, there was no evidence (until the eve of trial) that the Government possessed evidence that would support the allegation that Appellee actually said the contested indecent language charged in Specification 2.

The argument that the Government used these quotations based upon assumptions of what it thought Appellee might have said is concerning. Either there is probable cause to believe the language was used or there is not. In this case, it is clear there was not. We agree with the military judge that be-

---

[64] *Miller*, 33 M.J. at 237 (emphasis added).

[65] *Id.*

[66] Gov't Br. at 15.

cause this specification alleged specific communications about indecent language to a child, the actual words matter because the indecent nature of the words themselves are, in fact, an element of the offense.

The Government argues that *United States v. Pritchard* supports the proposition that the language "or words to that effect" can be used to put an accused on notice that the language was "not to be considered as being alleged verbatim in the specification."[67] While we agree with that proposition we do not find it applicable to this case. Allowing the Government to simply add "or words to that effect" is improper in this context – which is likely, as the military judge found, why these words do not appear in the model specification in either the Bench Book or the *Manual for Courts-Martial*.[68] Otherwise, the Government could essentially charge any word and then ask for a variance at trial. Adding the term, "or words to that effect," and applying it to the terms "a[***]" and "p[***]" does not save the preferral from being defective. Accordingly, we find that the military judge did not abuse his discretion in finding that Specification 2 was the product of a defective or improper preferral. The communication of the words themselves are the gravity of the offense preferred and in this case Specification 2 of Charge II.

We also find that the military judge did not abuse his discretion when he dismissed Specification 2 with prejudice. R.C.M 701(g)(3) provides military judges several authorized remedies for discovery violations. Recognizing that dismissal is one of the authorized remedies and that it is a "drastic remedy" appropriate when "no lesser sanction will remedy" the prejudicial effects of the discovery violation, we find, based on the totality of the circumstances, that the military judge did not abuse his discretion in dismissing this specification with prejudice.[69]

Similar to the military judge, we conclude that, in relation to Specification 2, the evidence and the law supported finding that the Government violated Mil. R. Evid. 304(d). Here, the Government charged specific, quoted, indecent language that purportedly came from Appellee. Yet, no facts were uncovered

---

[67] *United States v. Pritchard*, 42 M.J. 126, 130 (C.A.A.F. 1991).

[68] The model specification for sexual abuse of a child involving indecent communication states, "In that _____ (personal jurisdiction data), did (at/on board—location) (subject-matter jurisdiction, if required), on or about _____ 20__, commit a lewd act upon _____, a child who had not attained the age of 16 years, by intentionally communicating to _____ indecent language to wit: _____, with an intent to [(abuse) (humiliate) (degrade)_____] [(arouse) (gratify) the sexual desire of _____]. *Manual for Courts-Martial* [MCM] pt. IV, para. 62.e.(3)(c).

[69] *Stellato*, 74 M.J. at 488.

to evidence that quoted language. It is axiomatic that there can be no violation of Mil. R. Evid. 304(d) if no evidence exists to disclose; however, the Government here chose the specified quoted language. That choice then implied that evidence existed when it in fact did not. The trial defense counsel repeatedly inquired about the quoted language and the record indicates that the Government kept up the façade that the disclosure had already been made. The Government controls the charge sheet and, as a consequence, bears the responsibility of ensuring it accurately reflects the charges and specifications alleged. Such is the basis for the notice requirement.

The Government argues that the military judge failed to cite any authority requiring trial counsel to interview a witness to obtain information beyond what the witness disclosed in previous interviews. The Government asserts that while perhaps not a "best practice," trial counsel was not required to interview the victims months before trial. The Government also asserts that the military judge's contention that the trial counsel's actions were "egregious" because the victims chose not to speak with the Defense misapprehends the relationship between trial counsel and the victims.[70]

We agree with the Government that trial counsel are not required to interview a victim months before trial. We also agree that, in most cases, waiting to interview a victim until the eve of trial is not a "best practice." In this case, once on notice that the quoted language was never represented in evidence, the Government's delay until the eve of trial to interview the Ms. Madison and Ms. Grace and actually obtain the evidence was significant and the military judge correctly found that when considering the totality of the circumstances in this case, it was in violation of the Government's discovery obligations.

On numerous occasions, the Government was not forthright with the trial defense counsel regarding all of the evidence as it related to Specification 2. The Defense fairly and properly assumed, as did the trial court, that evidence existed supporting the allegation that Appellee allegedly made the actual quotes regarding "a[***]" and "p[***]." The trial defense counsel asked multiple times about the specific language in the specification, and multiple times the Government did not directly respond about the state of that evidence. Multiple times the Government articulated it had provided all known evidence to the Defense, a notion that the military judge correctly labeled a "fallacy."[71] We reject any notion that deliberate ignorance changes the calculation and agree

---

[70] *See United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986) (witnesses in criminal prosecution belong to no one).

[71] R. at 347.

17

with the military judge that the Government was not forthright with the Defense on the state of the evidence about these two quotations.

In addition, the Government, in this case, made a strategic decision not to interview Ms. Grace until 16 April 2022, a day and a half before trial was scheduled to begin. While it is not for this Court to question the tactics of when witnesses are interviewed, such matters are squarely within our jurisdiction insofar as they implicate Mil. R. Evid. 304(d) and principles of notice. We find these last-minute disclosures to be significant. They were clear, major, evidentiary disclosures and Ms. Grace's decision not to speak to defense counsel representing Appellee exacerbated the issue. While such a decision was well within her right as a named victim, this, as well as Government's posture regarding its discovery and disclosure obligations, magnified the necessity of Government candor. The Government's decision not to interview Ms. Grace between 3 March 2021 and 16 April 2022, as well as to not disclose the evidence or lack thereof regarding the quoted language in the specification, had a significant prejudicial impact on Appellee. Having considered all of these factors, as well as the circumstances surrounding Specification 2, we find the military judge did not abuse his discretion when he determined that dismissal with prejudice was an appropriate remedy.

*3. Charge II, Specification 4*

We find that the military judge's dismissal of Specification 4 was also proper and predicated on findings of fact that are supported by the evidence in the record.

Specification 4 differs from Specification 2 in that the evidence to support it did actually exist at the time of preferral. The problem is that the accuser did not review said evidence – the record clearly establishes that OS2 Romeo did not review either young woman's statement to NCIS. Instead, OS2 Romeo only reviewed the NCIS ROI summary of Ms. Grace's and Ms. Madison's statements, as well as media, none of which serve to support the allegation.

The ROIs provide no detail as to what took place between Ms. Madison and the Appellee when they talked separately. Additionally, the ROIs do not mention Ms. Madison stating that Appellee masturbated, nor that he directed her to touch herself inappropriately – all things the Government alleged Appellee to have done in Specification 4. As such, we agree with the military judge that there was no evidence that OS2 Romeo reviewed which could have reasonably led her to believe that Appellee committed the lewd acts alleged in Specification 4.

We find that the military judge did not abuse his discretion in determining that the preferral was defective and dismissing Specification 4. The specification as preferred was unfounded. We agree with the military judge that this

analysis would be different had OS2 Romeo actually reviewed the statements of Ms. Grace and Ms. Madison. Because the evidence actually reviewed could not have served as a foundation for Specification 4, we find that military judge did not abuse his discretion in determining that the preferral was defective and dismissing Specification 4 without prejudice.

## III. CONCLUSION

The Government's appeal is **DENIED**. The record of trial is returned to the Judge Advocate General for remand to the convening authority and delivery to the military judge for further proceedings not inconsistent with this opinion.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court